# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CT-00835-SCT

*RAY SKATES*

*v.*

*JEFFERY BRYANT*
*AND SHEREE BRYANT*

## ON WRIT OF CERTIORARI

DATE OF JUDGMENT: 2/11/2000
TRIAL JUDGE: HON. PERCY L. LYNCHARD, JR.
COURT FROM WHICH APPEALED: ADAMS COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT: L. JACKSON LAZARUS
JOSEPH S. ZUCCARO
ATTORNEYS FOR APPELLEES: WILLIAM F. RILEY
BOBBY L. COX
T. JACKSON LYONS
NATURE OF THE CASE: CIVIL - REAL PROPERTY
DISPOSITION: AFFIRMED - 11/20/2003
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1.     Jeffery and Sheree Bryant filed a petition in the Adams County Chancery Court against

Ray Skates to determine whether Quasar Drive, located in Natchez, was a private road that

entitled them to its exclusive use or a public road to be used by Skates and the general public.

The chancellor held that the right of ownership was vested exclusively in the Bryants.

Additionally, the chancellor enjoined Skates from the use of Quasar Drive unless he was given

permission to do so by the Bryants. On appeal, the Court of Appeals held that there was insufficient evidence for the chancellor to determine that a common law dedication of the road had occurred. *Skates v. Bryant*, No. 2000-CA-00835-COA (Miss. Ct. App. Nov. 6, 2001). Furthermore, the Court of Appeals held that there was sufficient evidence to support the chancellor's conclusion that the use was permissive, not hostile, and that the road was private. Therefore, the Court of Appeals found that the chancellor did not abuse his discretion and affirmed his judgment. Skates filed his petition for writ of certiorari claiming that the subject road should be considered a public road (1) under the common law doctrine of dedication as a result of the previous owner subdividing his land, and (2) under the doctrine of "user" as a result of hostile use for more than 10 years. We granted Skates's petition and now affirm.

**FACTS**

¶2.     Jeffery and Sheree Bryant own property in Natchez adjoining U.S. Highway 61. A road or drive known as Quasar Drive is located on the east side of the property. The Bryants received this land by conveyances from George Bryant, Jeffery's father, who named the road in honor of Quasar televisions, which he sold. Skates is the owner of the land located immediately to the south of the Bryants' property. Originally, Skates's property was also owned by George Bryant, who developed a trailer park on this property sometime in the 1960s. George created Quasar Drive as a means of ingress and egress to this property. George conveyed this property to James McManus in 1972, who continued to operate the trailer park for a period of time. After McManus's death in 1984, Skates purchased the property from McManus's wife. Evidence was presented that for at least ten years, while the trailer park was

2

in existence, Quasar Drive was used by residents of the park and others. Eventually, the trailer park ceased to exist. Even after Skates had obtained ownership of the property, there was an approximately two year period in which Quasar Drive had become overgrown with kudzu and was impassable. Skates's property was also accessible by other roads besides Quasar Drive.

¶3. At some point Skates placed some warehouses on his property, and the Bryants constructed a house alongside Quasar Drive. The Bryants contend that since Skates had placed warehouses on his land it had increased the flow of traffic on Quasar Drive, which frustrated their use and enjoyment of the land. On July 17, 1997, Jeffrey Bryant mailed a letter to Skates addressing the increase in traffic on Quasar Drive. The letter informed Skates that Quasar Drive was 100 percent on private property and as of July 15, 1997, it would only be used as a private drive to his residence. Nevertheless, Skates and those that utilized the warehouses on his property continued to use the road. Additionally, Skates had bulldozed a portion of the pavement of Quasar Drive and replaced it with gravel. It was due to the continued commercial use of the road that this matter went to trial.

¶4. At trial, Skates attempted to establish that the road was a public road and that he and the general public were entitled to use the road. Alternatively, Skates claimed adverse possession or prescriptive easement. The chancellor personally viewed the property in question before trial. A review of the deed between George Bryant and McManus does not show Quasar Drive being conveyed in the legal description. The chancellor found that Skates' use of the road was not exclusive or open and notorious, Skates' use of the road was permissive, and the road was not public. As a result, the chancellor held that the right of ownership was vested exclusively

3

in the Bryants. Additionally, the chancellor enjoined Skates from the use of Quasar Drive unless he was given permission to do so by the Bryants.

¶5. On direct appeal, the Court of Appeals held that there was insufficient evidence for the chancellor to determine that a common law dedication of the road had occurred. It further held that there was sufficient evidence to support the chancellor's conclusion that the use was permissive, not hostile, and the road was private. Therefore, it found that the chancery court did not abuse its discretion and affirmed its decision.

**DISCUSSION**

Standard of Review

¶6. We will not disturb the factual findings of a chancellor unless the findings are manifestly wrong or clearly erroneous. *Nettleton Church of Christ* **v.** *Conwill*, 707 So. 2d 1075, 1076 (Miss. 1997). This same standard is applied even when conflicting evidence has been presented by the parties. *See Harvey v. Meador*, 459 So. 2d 288, 293 (Miss. 1984). In the case at bar, there was conflicting evidence regarding whether Quasar Drive had become a public road under the theory of common law dedication. There was also conflicting evidence regarding whether Skates's use of the subject road was permissive or hostile.

**I. COMMON LAW DEDICATION.**

¶7. A street will become a public street under common law dedication when the survey and sale of lots makes reference to the streets. "If the owner of urban property has laid it off into lots intersected by streets, and sells the same with reference thereto, or with reference to a map or plat dividing it into squares, streets and alleys, such action will amount to a dedication

4

of the streets and alleys to the public." ***Luter v. Crawford***, 230 Miss. 81, 88, 92 So. 2d 348, 351-52 (1957).

¶8.    Skates claims that the Court of Appeals' decision here is in conflict with our decision in ***Nettleton Church of Christ***, and other cases.  However, this case is distinguishable from ***Nettleton*** (and related cases) in that the land in the present case was not sold according to a subdivided plat or map.  The back lot which was initially sold by George Bryant to McManus, and later to Skates, was one large lot which was accessed by Quasar Drive.  The Court of Appeals considered the question as follows:

> Although some of the evidence was disputed, there was evidence in the case at bar which showed that prior to the conveyance from George Bryant to McManus, George had a map prepared by engineer Richard Logan. The map showed individual lots owned by George, along with the one being purchased by McManus, as well as roadways, including the road called Quasar Drive. In this deed, there was a reference made to the map or plat; however, as asserted by the Bryants, the deed stated that the reference is made for the purposes of assisting in the description. Quasar Drive was not contained in the legal description.
>
> The testimony given only reflected that George Bryant may have initially intended to establish a subdivision on the lot currently owned by Skates; however, there is no evidence of a more conclusive nature to reflect that it had been formalized. *See Magnolia Memorial Gardens, Inc. v. Denton,* 317 So.2d 38, 42 (Miss.1975) (Mere *plans* for further development of a cemetery garden only shows an *intent* to develop and does not establish dedication for a public cemetery.)
>
> In *Magnolia Memorial Gardens,* the Mississippi Supreme Court continued and stated:
>
> > In order to constitute a dedication at common law, it is essential that there be an intention of the

5

owner of the land to donate the same for public use. It has been said that the controlling element of the common law dedication is the intent to donate. Donation is the act by which the owner of something voluntarily transfers the title and possession of the same without any consideration.

Furthermore, another essential element of a dedication is that it shall be for the public at large, not to one person or a limited number of persons or for the exclusive use of a restrictive group of individuals.

*Skates*, ¶¶ 26-28 (citations omitted). The facts in this case reveal that George's intent was to operate a trailer park. Quasar Drive was used by George as access for the residents of the park; therefore, it was intended to be used by a restrictive group of people, not the public in general. Additionally, the conveyance from George to McManus was a wholly private act, and not intended to benefit the public. Furthermore, as argued by the Bryants, the plat that was attached to McManus's deed did not show a subdivision that was going to be sold by lots and blocks to the general public. *Id*.

¶9.     Skates further claims that Quasar Drive was listed as a public road on the records of the Mississippi Department of Transportation and the Adams County Board of Supervisors, and supported this allegation with testimony of county road department employees. However, Skates was unable to present any minutes from the Board of Supervisors stating that Quasar Drive had been designated as a public road.

6

¶10. Skates's argument that Quasar Road is public is further belied by his actions prior to this litigation, when he removed some of the paving from the road with a bulldozer. We find that the Court of Appeals did not err in affirming the chancery court on this issue.

¶11. In his dissent, Presiding Justice McRae cites much evidence which supports Skates's contention that Quasar Drive was public. However, as pointed out above, the applicable standard of review is that we will not disturb the factual findings of a chancellor unless the findings are manifestly wrong or clearly erroneous. *Nettleton Church of Christ*, 707 So. 2d at 1076. This standard is applied *even when conflicting evidence was presented by the parties*. *Harvey*, 459 So. 2d at 293.

¶12. The evidence before the chancellor was as follows: While the trailer park was in existence, Quasar Drive was not only used by residents of the park, but also by such people as meter readers, school buses, and the postal service. A county worker with the road department cut the grass, put up a stop sign and patched potholes at the county's expense. The county road department prepared a school bus turnaround on Quasar Drive. There were no other completed work orders in the road department file. A general highway map showed the road, but the road was not named on the map. An Adams County map index classified Quasar Drive as a public road. An inspector submitted a report to the Board of Supervisors on the condition of the road, but the Board of Supervisors never classified Quasar Drive was a public road. The deed between Bryant and McManus did not show Quasar Drive being conveyed in the legal description. A land survey performed in 1977 and filed with the chancery clerk's office

7

showed Quasar Drive. The trailer park ceased to exist. Quasar Drive became overgrown and was impassable. Skates built warehouses on the property, and the Bryants built a house.

¶13. However, there was absolutely no evidence that George Bryant intended to donate the road to public use or to benefit the public in any way. The road was intended to be used by the residents of the trailer park, a restrictive group of people, not the public in general.

¶14. Especially crediting the evidence that the road was never designated as a public road by the Board of Supervisors and that there was no evidence of George Bryant's intent that the road was to be used by anyone other than the trailer park residents, we find that the chancellor's findings were neither manifestly wrong nor clearly erroneous.


## II. PUBLIC ROAD BY PRESCRIPTION.

¶15. Skates mentions the ten-year use of Quasar Drive but does not attempt to formulate an argument nor cite any authority for the proposition of establishing this road as a public road by prescription. Pursuant to *Hoops v. State*, 681 So. 2d 521 (Miss. 1996), we are under no obligation to consider a claim when no authority is offered in support thereof.

¶16. Skates raised this issue on appeal to the Court of Appeals. According to *Turner v. Duke*, 736 So. 2d 495, 498 (Miss. Ct. App. 1999), the necessary elements to establish a public road by prescription, much like those for adverse possession, include (1) open, notorious and visible, (2) hostile, (3) under claim of ownership, (4) exclusive, (5) peaceful, and (6) continuous and uninterrupted for ten years. When a road is not proven to be a dedicated public road under statute, there must be more evidence than mere travel by the public on the road for

8

ten years. The owner must "know of and acquiesce in the adverse claim, or the use must be so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed." *Id.*

¶17. There is sufficient evidence in the record to support the chancellor's conclusion that the use was permissive and the road was private. The Bryants testified that the use of Quasar Drive by Skates and others was with their knowledge and permission up until Jeffrey Bryant sent the letter to Skates in 1997. While Skates offered evidence to contradict the permissive use principle, the chancellor's findings are not manifestly wrong or clearly erroneous:

> A use that has its inception in the permission of the owner will continue as such until a distinct and positive assertion of a right hostile to the owner is brought home to him by words or acts. To transform a permissive use into an adverse one there must be (1) a distinct and positive assertion of a right hostile to the rights of the owner, which is brought to his attention, or (2) a change in the character of the use.

*Patterson v. Harris*, 239 Miss. 774, 125 So. 2d 545, 550 (1960) (citations omitted). Up until Bryant sent the letter to Skates in 1997, the element of hostility was missing. Because it has not been 10 years since that letter was sent, Skates cannot prevail on this theory.

## CONCLUSION

¶18. Because Quasar Drive was not a public road and was not dedicated by public use under the common law, and because the road did not become a public road by prescription, we affirm the judgments of the Court of Appeals and the Adams County Chancery Court.

¶19. **AFFIRMED.**

9

**PITTMAN, C.J., SMITH, P.J., COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**