McMILLIN, C.J., for the court.
¶ 1. E.E. Moran sought to claim title to an undeveloped tract of forty acres through adverse possession in a suit filed in Hancock County. The suit named the record title holder, Laurie Louise Curet Saucier, as defendant. The chancellor found that Moran had failed to carry his burden of showing the elements of an adverse possession claim by the requisite standard of clear and convincing evidence. He also granted Saucier’s counterclaim confirming her title to the property and enjoining Moran from any further entry. Moran has appealed, citing eight separate errors he claims warrant reversal of the chancellor’s decision. We find the issues without merit and affirm the judgment.
I.
Facts
¶ 2. Moran testified that he began farming the forty acre tract in dispute in 1963 when his father, who had previously farmed the tract, verbally authorized him to do so. The record title holder of the property at that time was Louise Gertrude Curet (“Mrs.Curet”), who was the mother of the present title holder, Laurie Louise Curet Saucier. Moran claimed to have been in exclusive possession of the tract since that time and, though neither he nor his father had a deed to the property, Moran asserted that title to the property had ripened in him through adverse possession as early as 1973. Moran testified to certain improvements on the property *697 made by him, including installation of fencing and digging a pond. He claimed that he used the property both for row crop farming and to run cattle during his period of occupation. He testified that he neither sought nor obtained permission from Mrs. Curet or any other member of her family to use the land nor did he ever pay any rent for the use of the premises. He admitted that he had never paid ad valo-rem taxes on the property during his period of occupancy.
¶ 3. The record title holder of the property in 1998 at the time Moran filed his suit to confirm his title was Laurie Louise Curet Saucier. She had acquired the property by deed from the heirs of George Curet (Saucier’s father). The property had been vested in George Curet upon the death of his wife in 1982. Saucier offered evidence showing that her family had utilized the property intermittently, primarily for recreational hunting purposes. Saucier also introduced a series of annual applications for certain federal government agriculture benefit payments for the years 1985 through 1991 signed by Moran, in each of which Moran had shown Mr. Curet as the owner of the property and himself to be a tenant in possession. Saucier also presented evidence tending to show that her father and Moran’s father were close friends who had been involved in various business enterprises together and that the arrangement for the elder Moran to use the forty acres owned by the Curets was a permissive one, rather than hostile.
¶ 4. The chancellor concluded that Moran had failed to carry his burden to establish title to the disputed property by adverse possession and denied any relief on the complaint. This appeal by Moran followed. In the appeal, Moran raises eight separate issues upon which he bases his claim of entitlement to relief from the judgment.
II.
Issue One: A Procedural Question
¶ 5. Saucier was less than diligent in responding to discovery. After she failed to comply with two separate orders compelling her to respond to discovery requests, the chancellor sanctioned Saucier for her unresponsiveness by entering an order striking her answer and counterclaim and setting the ease for trial. However, prior to trial, Saucier filed a motion to reconsider the sanctions, setting out certain hardships encountered by her attorney that had prevented the timely filing of discovery responses. The chancellor entered a subsequent order that reinstated Saucier’s pleadings and ordered that she respond to discovery responses within ten days of the order’s date. Insofar as the record reveals, no notice was given to Moran of any hearing on Saucier’s motion to reconsider.
¶ 6. On the morning of trial, approximately two months later, Moran’s counsel represented to the chancellor that, not only did he not receive notice of a hearing on Saucier’s motion to reconsider sanctions, but that he was unaware that any relief had been granted on the motion until he arrived at the courthouse for trial. However, rather than seeking to have the ex parte order set aside, counsel for Moran said only, “So I’m here without having answered the counterclaim. And if the Court is going to go forward on it I want to at least be able to verbally answer the counterclaim.” The chancellor thereupon permitted Moran’s counsel to dictate an answer to the counterclaim into the record and the case proceeded to trial.
¶ 7. Now, in this appeal, Moran asserts that the chancellor committed reversible error in setting aside discovery sanctions on Saucier’s motion without having *698 first conducted a hearing. He cites Mississippi Rule of Civil Procedure 6(d), which contemplates a hearing on not less than five days’ notice on motions other than those which may be heard ex parte. M.R.C.P. 6(d).
¶ 8. The evident problem is that such issues, not squarely presented for resolution at the trial level, may not be raised for the first time on appeal. Read v. Southern Pine Elec. Power Ass’n., 515 So.2d 916, 921 (Miss.1987). Though Moran’s counsel voiced some dissatisfaction with the procedure by which relief was granted from the original order containing substantial sanctions for discovery violations, he did not formally request the court to take any specific action to rectify the situation. Rather, his representation to the court quoted above appears to this Court as a waiver of any objection to the removal of the discovery sanctions so long as Moran would be afforded an opportunity to answer the counterclaim. This requested relief was, in fact, accorded Moran and we conclude that this brought an end to the matter. Under such circumstances, Moran may not now revive his dissatisfaction with the chancellor’s handling of the matter and seek different relief in this Court.
III.
The Substantive Issues of Law Presented on Appeal
¶ 9. In addition to the procedural issue already discussed, Moran’s brief purports to raise seven separate issues relating to alleged errors committed during the conduct of the trial. However, in the argument portion of his brief, Moran combines certain of the issues into four general categories. Our review of the issues leaves us convinced that they all consist of attacks on the probative value of the evidence relied upon to support the chancellor’s decision, the underlying thrust of which is that the chancellor’s decision was against the weight of the evidence. We will, in that light, discuss that issue in a single discussion.
¶ 10. The principal finding of fact by the chancellor that is the underpinning for his decision appears to this Court to be that Moran failed in his burden to show that his use of the property at its inception was hostile to the record owner. As the chancellor found, Moran was not occupying the property under color of title. His sole claim of right, according to his own evidence, was that he had been given permission to use the land by his father, Oswald Moran. The chancellor concluded, on those facts, that the nature of Pete Moran’s occupancy was the same as his father’s since it was derived from him. There was no attempt by Pete Moran to prove exactly when his father’s use of the property began or the circumstances existing at its inception. Saucier, on the other hand, presented evidence that George Cu-ret and Oswald Moran were close associates and on friendly terms during their adult lives and were involved in a number of joint economic efforts from time to time. From that, the chancellor concluded that Oswald Moran’s use of the property was permissive at its beginning and throughout the period of his occupancy. Such a finding of fact by the chancellor, if supported by substantial evidence, is entitled to substantial deference on appeal. Morgan v. West, 812 So.2d 987(¶ 7)(Miss.2002).
¶ 11. The law is also clear that an occupancy that is permissive in nature at its beginning cannot, no matter the length of its duration, transform itself into the type of hostile occupancy necessary to gain title through adverse possession. Patterson v. Harris, 239 Miss. 774, 786, 125 So.2d 545, 550 (1960). We find the chan *699 cellor’s conclusion that the nature of Pete Moran’s occupancy on the facts of this case must be viewed as the same as his father’s occupancy to be entirely reasonable and proper. This is especially so considering the absence of any evidence that Pete Moran took any steps to put the record owner on notice that he was asserting some sort of claim to the property that was different in nature from the previous use of the property by his father.
¶ 12. The remaining factual issues which Moran seeks to challenge in this appeal deal with various findings of fact by the chancellor regarding evidence tending to show that Moran’s occupancy was not, in fact, hostile, or, at least, that it was not of a character likely to constitute the requisite “flying of the flag” that would unequivocally put Saucier and her predecessors on notice of the adverse nature of his occupancy. Blankinship v. Payton, 605 So.2d 817, 820 (Miss.1992).
¶ 13. In reality, these findings serve primarily to buttress the threshold finding of the chancellor to the effect that Moran never showed that his possession at the beginning was hostile in nature by the requisite standard of proof of clear and convincing evidence. Rice v. Pritchard, 611 So.2d 869, 871 (Miss.1992). It would, perhaps, be of more relevance were there some contention that, without regard to the nature of Moran’s use at its inception, there was some event or some series of events that would have put Saucier or her predecessors on clear notice that Moran was asserting a right of possession that was superior to that of the record title holders. There is, however, no such assertion by Moran in his brief and we find no support in the record for a proposition of that nature. We will consider those various claims in more detail.
¶ 14. Moran claims that the chancellor erred in concluding that Moran’s use of the property was not so openly hostile to Saucier and her predecessors in title as to unequivocally put them on notice of his claim to occupy the property by right superior to theirs. It is undisputed that Moran paid no rent to farm the property and retained all the farming proceeds himself. However, Moran never paid or, insofar as the record demonstrates, attempted to pay the ad valorem taxes on the property. There were also documents relating to federal agricultural benefit payments during much of the time in question that were relied upon by Moran to obtain the benefits which on their face showed Moran as a tenant on the property. Additionally, there is evidence in the record that members of the Curet family from time to time used the property for recreational hunting purposes without seeking Moran’s permission. These considerations could reasonably be seen by the chancellor as weakening Moran’s claim of exclusive hostile possession during the requisite ten year period — one of the essential elements of a successful claim of adverse possession. Gadd v. Stone, 459 So.2d 773, 774 (Miss.1984). Finally, it must also be recalled that, even were it shown that Moran’s occupancy was exclusive for ten years, that alone does nothing to bring into doubt the chancellor’s determination that the use of the property was permissive at the beginning.
¶ 15. Moran also claims that the chancellor erred in evaluating the evidentiary value of a 1989 letter written by Moran to Charles Curet. Moran claims that this letter was the sole possible evidentiary basis for the chancellor’s determination that Moran had made an offer to purchase the property in 1989 and that an offer to purchase from a third party is inconsistent with a claim of ownership. The letter in question recites in part that “[sjince my family has been farming the land for more than 30 years, without anyone’s permission, we feel that we have used it adverse *700 ly to your title.” The chancellor makes no specific finding that he relied on this letter to support his finding that Moran had, at one time, offered to purchase the property after the time he now contends his title had been acquired by adverse possession. There is, in addition to that letter, a subsequent one from an attorney representing Moran written to Saucier in 1997 that offered her $500 for the property. However, the letter also makes clear Moran’s position that he has acquired title by adverse possession and that the offer is intended merely to avoid the difficulties associated with litigating such a claim. We would agree with Moran that these letters could not, by any reasonable construction, be seen as an acknowledgment of ownership of the property in Saucier or any predecessor in the record title. However, the 1989 letter is the first'clear indication in the record that Moran was claiming title by adverse possession, and there is' no contention in his brief that Moran successfully made out all the essential elements of an adverse possession claim for any ten year period after the 1989 letter. In fact, the chancellor, in dealing with this issue, specifically noted that Moran’s complaint was filed in 1998 and, therefore, it was impossible for the ten years to have run from the time of issuance of that letter until suit was commenced.
¶ 16. In this ease, we find that there was substantial evidence to support the critical finding of fact by the chancellor' that Moran’s use of the property, derived from his- father, was therefore of the same character as his father’s use. We also find that there was evidence presented that would support the chancellor’s finding that the use of the property by Moran’s father was permissive in nature by virtue of an apparently close affiliation between his father and the then-record title holder’s husband, George Curet. Finally, we think the evidence supports the chancellor’s conclusion that Moran’s letter of 1989 was the first possible communication or action that would have plainly put any record title holder on notice that Moran considered the nature of his occupancy to have changed from the permissive use that originated during his father’s occupancy. Furthermore, it is clear that the statutory ten-year period of adverse occupancy had not run between the time the letter was sent and this action was commenced.
¶ 17. For the foregoing reasons, we conclude that it is appropriate to affirm the judgment of the chancellor.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF HANCOCK COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. THOMAS, J., NOT PARTICIPATING.