¶ 1. Michael Webb and Mississippi Property Holdings, L.L.C. (Appellants), filed a complaint against Neil Mearns and Joyce Mearns, requesting temporary and permanent relief on the basis of an alleged prescriptive easement. The Mearns brought L.A. Koenenn and Mae Koenenn into the lawsuit as third-party defendants, alleging that the Koenenns may have breached warranties in their deeds to the Mearns. After discovery, the Harrison County Chancery Court granted summary judgment on behalf of the Mearns and the Koenenns. Aggrieved, the Appellants appeal, asserting that summary judgment was in error.
 ¶ 2. Finding error, we reverse and remand for further proceedings consistent with this opinion. *Page 919 
 FACTS ¶ 3. On May 22, 1979, J. Ed Turner deeded an eighty-acre piece of undeveloped rural property in Harrison County to Michael Webb and Watts Webb as tenants in common. Because the property was undeveloped, the Webbs apparently accessed the property by traveling over land to the north of their own. At the time of the Webbs' purchase of the property, the land directly to the north was owned by the Koenenns. On January 8, 2001, Watts Webb conveyed his interest in the property to Mississippi Property Holdings, L.L.C., making Michael Webb and Mississippi Property Holdings the owners of the property, which is still undeveloped.
 ¶ 4. In 1973, the Koenenns acquired a 160-acre piece of land in Harrison County. At the time, the property was rural and undeveloped, with no public access. In 1975, the Koenenns began to develop the property into five-acre residential lots. This undertaking included the construction of roads between the lots. The roads were completed in 1977 and were deeded to Harrison County by the Koenenns. According to the Koenenns, the roads built between the lots all ended 330 feet from the property line of the adjacent properties. From 1978 to 2003, the Koenenns sold the five-acre sites. By the time suit was filed in this matter, on January 14, 2004, the Koenenns no longer owned any property in the development. The road in the development that is immediately to the north of the Webbs' property is known as "Corrie's Place." According to the Koenenns, this road, like all the other roads in their development, ends 330 feet north of the Webbs' property.
 ¶ 5. On March 14, 1989, the Koenenns granted a temporary easement to the Webbs, allowing the Webbs to use Corrie's Place for timber removal. The easement was limited in duration, and terminated without renewal on November 1, 1990. As part of this easement, the Webbs were allowed to improve Corrie's Place by paving the road with gravel and constructing culverts. The easement also extended Corrie's Place to meet the Webbs' property.
 ¶ 6. In March 2001, the Mearns purchased one of the five-acre lots from the Koenenns. Almost a year later, in January 2002, the Mearns purchased the five-acre lot adjacent to their first property from the Koenenns. These ten acres lie immediately to the north of the property owned by the Appellants. Some time after their purchase of the second parcel, the Mearns built a fence around their property, cutting off access by way of Corrie's Place to the Appellants' property.
 ¶ 7. Thereafter, the Appellants filed their complaint, alleging that they had obtained a prescriptive easement to use Corrie's Place to gain access to their property. After discovery, the Harrison County Chancery Court granted summary judgment on behalf of the Mearns and the Koenenns, finding that the Appellants had failed to present a genuine issue of material fact regarding their claim for a prescriptive easement.
 ANALYSIS AND DISCUSSION OF THE ISSUE ¶ 8. We use a de novo standard when reviewing a grant of summary judgment. Moss v. Batesville Casket Co.,935 So.2d 393, 398 (¶ 15) (Miss. 2006). Summary judgment is proper only where the evidence shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. at 398 (¶ 16) (quoting M.R.C.P. 56(c)). The Mearns and the Koenenns, as the parties moving for summary judgment, bear the burden of proving that no genuine issue of material fact *Page 920 
existed. Id. On the other hand, the Appellants are to be given "the benefit of every reasonable doubt." Id.
(citing Tucker v. Hinds County, 558 So.2d 869, 872
(Miss. 1990)). "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." Id. at 398 (¶ 17) (quotingTucker, 558 So.2d at 872). When making our determination, we view the record in "the light most favorable to the non-moving party," here the Appellants. Id.
at 399 (¶ 17) (citations omitted).
The Ten Years Prior to the Temporary Easement
 ¶ 9. A prescriptive easement requires the same elements to be proven as does a successful claim for adverse possession.Keener Props., L.L.C. v. Wilson, 912 So.2d 954,956 (¶ 4) (Miss. 2005). In short, "the evidence must show that possession is: (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." Id. (citing Thornhill v. Caroline HuntTrust Estate, 594 So.2d 1150, 1153 (Miss. 1992)). The Appellants could not meet these elements during the period of the temporary easement, because the Webbs' use of the property during that time was clearly permissive, not hostile. Therefore, we must look at the ten years prior to the temporary easement and the ten years after the temporary easement, as the Appellants claim that they proved the elements for a prescriptive easement during both of these periods.
 ¶ 10. The Webbs received their property from Turner on May 22, 1979, and the temporary easement began on March 14, 1989. Therefore, the Webbs owned their property for only nine years and ten months before the temporary easement, an insufficient time to meet the prescriptive easement requirements. However, a property owner may "tack" the possession of a prior owner in privity under some circumstances. See Rutland v.Stewart, 630 So.2d 996, 999 (Miss. 1994).
 ¶ 11. Tacking is appropriate only where the prior owner's possession was also adverse and hostile. Gillespie v.Kelly, 809 So.2d 702, 706-07 (¶ 14) (Miss.Ct.App. 2001). In this case, the evidence does not show that Turner's use of the property was hostile. The only evidence supporting such a claim is a statement in Michael Webb's affidavit that "at the time we purchased our property in 1979, it was represented to me by the realtor . . . that access to and from our property was by way of Corrie's Place . . . that this was the only access to our property, and that prior owners accessed the property in this manner."
 ¶ 12. By contrast, L.A. Koenenn swore in his affidavit that "[t]he owner prior to Mr. Webb did not use the road without my permission. . . ." Therefore, Koenenn averred that any use of the road by Turner was with the Koenenns' permission. No evidence was presented by the Appellants to refute this evidence, other than Michael Webb's statement that his realtor told him that Turner used the road to access his property. Accepting Webb's statement as true, it does not necessarily conflict with L.A. Koenenn's averment that Turner's use of the road was by permission. If Turner's use of the road was with permission, the realtor clearly still could have told Michael Webb that Turner used the road to access his property. Nothing in Michael Webb's affidavit indicates that Turner must have used the road without permission. In the absence of any evidence that Turner's use of the road was hostile, the Appellants cannot tack Turner's possession to their own. Therefore, summary judgment was proper as to the *Page 921 
ten years prior to the temporary easement, as the Appellants have failed to show a genuine issue of material fact regarding one of the requirements for a prescriptive easement, specifically the requisite ten year possession.
The Ten Years After the Temporary Easement
 ¶ 13. In its grant of summary judgment, the court discussed the ten years prior to the temporary easement at length, ultimately finding that "[t]he permissive use time of J. Ed. Turner cannot be tacked to the time claimed by the Plaintiffs Webb [sic] and therefore, there is no genuine issue of material fact regarding the required 10 year adverse possession." As previously discussed, we agree with this finding by the chancellor. The ten years after the temporary easement, however, was not specifically discussed by the chancellor. Therefore, this Court has no actual knowledge of why the chancellor found that summary judgment was proper as to the ten years after the temporary easement.
 ¶ 14. The Koenenns and the Mearns urge this Court to find that summary judgment was proper as to the ten years after the temporary easement by virtue of the fact that the temporary easement created a permissive use of the roadway. Permissive use prevents a prescriptive easement from forming: "use by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription, since adverse use, as distinguished from permissive use, is lacking."Sharp v. White, 749 So.2d 41, 42-43 (¶ 8) (Miss. 1999) (quoting Patterson v. Harris,239 Miss. 774, 785, 125 So.2d 545, 550 (1960)). "To transform a permissive use into an adverse one there must be (1) a distinct and positive assertion of a right hostile to the rights of the owner, which is brought to his attention, or (2) a change in the character of the use." Patterson, 239 Miss, at 785,125 So.2d at 550 (citations omitted).[1]
 ¶ 15. We find that these principles of law do not justify summary judgment for two reasons. First, this case deals with atemporary permissive use that had a specific termination date. There was no extension of the temporary easement. Therefore, any use after the termination of the temporary easement was clearly without permission and would have been hostile. In this situation, the Patterson test for determining whether a permissive use became hostile simply does not apply. Second, even if these standards applied in this case, the nature of the Webbs' use of the land clearly changed after the termination of the temporary easement. The purpose of the temporary easement was to allow timber to be removed from the Webbs' property. By contrast, Michael Webb claims that he and others used the property for occasional recreational purposes, such as hunting. This use would clearly constitute a "change in the character of the use," and would thus be sufficient to overcome the temporary easement. Therefore, even if the standard applied in this case, the evidence would be sufficient to create a genuine issue of material fact sufficient to overcome summary judgment.
 ¶ 16. Although L.A. Koenenn and his son claim in their respective affidavits that any use of the land by Webb was with permission, or that Webb never used the *Page 922 
land after 1990, Michael Webb claims the opposite in his affidavit. In his affidavit, Webb claims:
 since we purchased our property . . . we have used Corrie's Place, including the 330-foot portion at issue, as the sole access to our property. Furthermore, over the years I have maintained Corrie's Place . . . by clearing it of brush, trees and other debris, as well as leveling it on occasion. . . . That on several occasions over the years, including during the 1980s, we have leased our property for hunting purposes to various persons . . . [who] accessed our property by way of Corrie's Place, including the 330-foot portion at issue. That since our purchase of the property . . . I also visited our property three to four times per year to hunt, check the boundaries and the tree lines.
This evidence stands in stark contrast to the statement in the Koenenns' affidavits that there was no evidence of use of the road after the temporary easement. Further, we note that L.A. Koenenn's assertion that any use by Webb was with permission makes no sense in light of Koenenn's statement in his affidavit that, to his knowledge, Webb never used the property after the temporary easement. It is unclear to this Court how a use could both be unknown to the owner and yet be with the owner's permission.
 ¶ 17. In short, there was contradictory evidence regarding Webb's use of the property after the termination of the temporary easement. Therefore, summary judgment was improperly granted in this case, at least as to the ten-year period after the termination of the 1989 temporary easement.
 ¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF HARRISONCOUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGSCONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL AREASSESSED TO THE APPELLEES.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
[1] The chancellor in this case mentioned these standards, but did not discuss them in relation to the ten years after the temporary easement. Regardless, the Koenenns and the Mearns urge this Court to find that these standards justify summary judgment as to the ten years after the temporary easement.