LUTER *v.* CRAWFORD, et ux.

No. 40379 February 4, 1957 92 So. 2d 349

*Phillips & Wiltshire,* Magnolia, for appellant.

*Breed O. Mounger,* Tylertown, for appellees.

LEE, J.

Mrs. Nina Vaught Luter, for herself and two children, as owners of Lot 5 and 40 feet off the east side of Lot 3, Block I, according to the revised map of the Town of Tylertown, and for the benefit of other parties, brought her bill for an injunction and other relief against Walter W. Crawford and wife to prevent the obstruction of Lampton Alley on which her property abuts. It was alleged that the defendants owned land both north and south of this alley at the east end thereof, and were about to erect a building thereon which would permanently block and close it. A temporary injunction was issued.

The defendants, in their answer, denied that there had been a dedication by the original grantors or an acceptance by the town; denied that the town had ever opened the alley or assumed jurisdiction of it, but alleged that if in fact there had been a dedication and acceptance, the town had long since abandoned it; and averred that, since the alley did not legally exist, the defendants, as adjacent owners, owned the land to the center thereof, and were entitled to use the same as they desired. They also filed a motion to dissolve the injunction and prayed for an award of damages and attorney's fees on account of the wrongful suing out of the same.

At the close of the hearing, the learned chancellor held that the evidence failed to show that the alley was ever laid out or dedicated to public use, or that the Town of Tylertown ever accepted such dedication or exercised

jurisdiction thereover, dissolved the injunction, and a-
warded an attorney's fee in the sum of $150. From the
decree entered, Mrs. Luter appealed.

On September 19, 1895, a plat of Tylertown, Pike Coun-
ty, Mississippi, at that time an unincorporated village,
made by D. M. Pound, surveyor, and signed and acknowl-
edged by him and by W. M. Lampton and others, ''own-
ers of land described as Tylertown as herein platted'',
and designating Lampton Alley thereon, was filed in
the office of the Chancery Clerk of Pike County.

On April 5, 1905, a revised map of Tylertown, Missis-
sippi, still an unincorporated village, made by Xavier
A. Kramer, surveyor, and signed and acknowledged by
him and by W. M. Lampton and others, and designating
Lampton Alley thereon, was filed in the office of the
Chancery Clerk of Pike County. The grantors stated
therein that ''they are the owners in fee simple of cer-
tain parts of the land herein platted and that the re-
vision of this town plat does in no way effect the other
property holders, in that the purpose of this revised
map is to correct certain errors in measurements etc.,
that appear on the original map recorded in the office of
the Chancery Clerk, Pike County.''

In both the plat and the map, the blocks or squares
were designated alphabetically from A to O, inclusive.
The lots therein were designated numerically.

Block H abuts College Street on the south, Collins
Avenue on the west, Cleveland Avenue on the east, and
Lampton Alley on the north.

Block I, immediately north of Block H, likewise abuts
Collins Avenue and Cleveland Avenue on the west and
east, respectively, and Church Street on the north and
Lampton Alley on the south. In other words, Lampton
Alley, 40 feet wide, runs east and west between Blocks
H and I. Mrs. Luter's property in Block I abuts on both
Church Street and Lampton Alley. Dr. Crawford's prop-
erty in Block H fronts 70 feet on Cleveland Avenue, with

a depth of 166 feet abutting on Lampton Alley, and in Block I it fronts 10 feet on Cleveland Avenue, with a depth of 180 or 185 feet abutting on Lampton Alley. Dr. Crawford was about to close the alley between his two lots.

The map in question has been used as an official map of the Town of Tylertown and a public map of the county ever since it was filed for record. The Lamptons, the original owners, sold their land by this map. The Town of Tylertown was chartered on December 19, 1907. All of the streets in proximity to Lampton Alley, that is, College Street, Cleveland Avenue, Collins Avenue, Church Street, and Broad Street, five in all, have been opened up and paved by the town.

It was admitted that the streets and avenues, shown on this map, have never been assessed for taxes; that the revised map has been used for the purpose of assessments since the incorporation of the town; and that Blocks H and I have always been assessed by lots and blocks.

Dr. Crawford admitted that, when he bought his property in 1946, he recognized this alley as an alley at that time; that he so recognized it when he tried to get Mrs. Luter to agree to close it; that he so recognized it at the time when he petitioned the town to close it; and that he so recognized it until the town removed itself from jurisdiction thereover in December 1954, when he then thought that it became his property.

The proof showed that Dr. Crawford presented his petition to the town board on August 3, 1954, seeking to close this alley; and that the minutes of the board of date of September 7, 1954, showed that, ''the board denied the petition of Dr. Walter Crawford submitted at the August 3rd meeting to close the street known as Lampton's Alley.'' It was not until the minutes of the meeting of December 7, 1954, that the board found that Lampton's Alley had never been opened up to the public

for travel, and that the town was not engaged in opening or maintaining it, and has no jurisdiction over it, and it was not in its power to determine the existence or nonexistence of the street.

W..H. Brumfield testified that in 1920 and 1921, there was a barn facing the alley, on what is now Mrs. Luter's property; that he rented the same for a horse and buggy and a delivery wagon during that period; that he used the alley the entire time; and that it was open at that time to the general public.

J. C. Rhimes, a defense witness, who, at one time, had represented Lampton Realty Company and who sold what is now the Luter property to H. C. Rushing, testified that, when the area in the revised map was laid off, the lots and the alley were only an imaginary line; that the alley was not opened up from one end to the other, "but it has been accessible to people owning the property. They could go in and out it at either end, but it was not recognized as a street. I mean being graveled and graded or used as a street."

H. C. Rushing testified that, when he purchased this land in 1927, Rhimes told him that it was an alley, and belonged to the city. He said that he himself used it to haul material over; that people went through there all the time; that fifty odd years before, he used it in hauling wood to Lampton, Payne and Magee, and that school children were using it.

J. O. McDonald, who owns property just west of Mrs. Luter's and who purchased the same from Rushing in 1930, understood that this was an alley or a street. He traveled the alley from time to time from both ends. In a deed to his son, which was prepared by the attorney for the defendant, one of the calls was to the "intersection of Collins Avenue and Lampton's Alley." He said further more that the city ditched the alley.

Mrs. Luter testified that her family moved on the property in 1941 or 1942; that her then husband, Walter

Vaught, used the alley as a street until his death in 1948; that Terry Martin, a Negro, working for the town on the streets, ditched and put gravel on the alley; and that at one time, her husband filled a ditch with crossties. She said that her husband traveled it in a truck and that she had seen cars go through, and that she had used it herself. She mentioned as other users a Mr. Barnett, a Mrs. Coker, a Mr. Pigott, a Mr. Simmons, a Miss Kate, and Sam Bright. She has no way to reach the rear of her property except by this alley. J. C. Copes, living on Church Street, corroborated certain parts of her testimony.

Dr. Crawford, while denying that the alley had been opened or graveled or that cars or ordinary vehicles could travel it, testified that Mr. Luter used it about once a month and had to cut weeds on it in the summer.

Several other witnesses testified either that they had not gone through the alley at all, or only once or twice. They saw no bridge or gravel or the alley was not opened up to their knowledge, or they never knew of the alley until this suit came up, or had never seen or heard of its use by the public.

The chancellor, after the witnesses had testified, went upon the premises and viewed the same.

 This Court in 1873, in the case of Briel v. City of Natchez, 48 Miss. 423, approved the rule that the survey and sale of lots with reference to the streets is a dedication of such streets. The opinion said that, "if the owner of urban property has laid it off into lots intersected by streets, and sells the same with reference thereto, or with reference to a map or plat dividing it into squares, streets and alleys, such action will amount to a dedication of the streets and alleys to the public." Actually this rule had been recognized in 1837 in the case of Vick and Rappleye v. The Mayor and Aldermen of Vicksburg, 1 How. 379, one syllabus of which said: "When the owners of urban property have laid it out

into lots with streets and avenues intersecting the same, and have sold lots with reference to such plat, it is too late for them to assume a general and unlimited control over the property *thus dedicated* to the public." (emphasis supplied). This principle was reaffirmed in City of Vicksburg v. Marshall, 59 Miss. 563. As late as 1956 in Skrmetta v. Moore (Miss.), 86 So. 2d 46, this Court said: "Owners of land adjoining Oak Street have sold and deeded their lands by lots and blocks as they appear upon that plat and have thereby dedicated Oak Street to the City."

The appellees contended in the court below, and contend here, that the evidence failed to show an acceptance of the dedication by the Town of Tylertown, or at least that the trial court had substantial evidence upon which to find that it had not done so.

In Briel v. City of Natchez, supra, it was recognized that, in order to consummate a dedication, there must be an acceptance, but the Court said that such acceptance, may occur "either by the formal act of the local municipal authority, or it may be inferred or implied from sufficient circumstances." Besides it was there recognized that it is not necessary that there shall be an immediate user; but that it may be years before the authorities take the streets in charge.

In Indianola Light etc. Co. v. Montgomery, 85 Miss. 304, 37 So. 958, it was held that, under an implied dedication, where the owner had made a map and sold lots as laid out thereon, the failure of the city, for over ten years to use the entire strip which was laid out as a street, did not deprive it of the right to do so when necessary. Briel v. City of Natchez, supra, was cited with approval and quoted from at length. The principles, which were announced in both of these cases, were adhered to and reaffirmed in Skrmetta v. Moore, supra.

In the case of City of Jackson v. Laird, 99 Miss. 476, 55 So. 41, the appellee sought to recover damages for

the death of a Negro boy, who fell into an open cistern on Convent Avenue in "Split Addition" which was platted by the owner, with certain streets dedicated to the public use. The plat was recorded by the board of supervisors. Subsequently the corporate limits of the city were extended to include this addition. While other streets and avenues were worked and repaired by the municipal authorities, this avenue had been unused for a long time, although for several years before this date it had been unobstructed and was used to limited extent by the traveling public. Taxes were paid on the lots, but no tax was required on the streets or avenues. There was no order on the minutes of the municipal board accepting the dedication of the streets. The sole question was whether the dedication had been accepted by the city. In rejecting the city's contention that the dedication had not been accepted, this Court said: "In 1888 Griffith made a survey and map of his land, laying it off into blocks, lots, streets, and avenues, and later sold the blocks and lots with reference to such streets and avenues. In 1904 the corporate limits of the city were extended so as to include 'Split Addition.' Since that time the city has assessed the blocks and lots of this addition for taxation, but not the streets and avenues. *Convent avenue, where the injury occurred, has not been graded nor worked by the city, but has been used to a limited extent by the public. Other streets and avenues of 'Split Addition' have been worked and kept in repair by the municipal authorities and used by the public. These facts constitute an acceptance by the city of the dedication of 'Split Addition,' including those streets and avenues which have not been graded and kept in repair.*" (Emphasis supplied).

 █ In the case before the Court, the making and recording of the revised map, its use as an official map of the Town of Tylertown, the sale of lots by the original owners and the subsequent purchasers according to the

map, the use of the map for the purpose of the assessments, the nonassessment of streets and avenues for taxes, the opening and paving of most of the streets and avenues shown on the map, the overwhelming weight of the evidence that the alley was used by abutting property owners and that there was a limited use of it by the general public—all of these acts demonstrate that the town had accepted the dedication, even though it had not formally done so by ordinance or resolution.

The other question is whether the town had abandoned this alley. The Town Board in September 1954 denied Dr. Crawford's petition to close the alley, which had been filed at the previous August meeting. In other words, the board was evidently of the opinion at that time, that Lampton Alley was a street of the town. It assumed jurisdiction and refused to close it. In view of what has been said above, it is obvious that the town had already accepted the dedication and was then acting agreeably to, and in conformity with, its jurisdiction and power.

However, at the meeting of December 7, 1954, the board adopted a resolution which recited that a controversy exists between the owners of the property adjacent to Lampton Alley, and proceeded to find as a fact that, insofar as the records of the town were concerned, the alley has never been opened up to public travel and "the Board thereupon determines as of a fact that it has no jurisdiction over said street, and upon advice of counsel hereby determines and adjudges that it is not within the jurisdiction, power or province of this Body to determines the existence or non-existence of said street in any manner whatsoever."

 Perhaps this action was based on the idea that no formal resolution of acceptance was of record. But in view of what has already been said, such action was not necessary. The board could not, by a mere disclaimer at that late date, repudiate the town's previous accept-

ance of the dedication. ██ █ The resolution in no way assumed jurisdiction nor did it signify its purpose and intention to abandon the alley.

██ █ In no event could the appellees close this alley, insofar as the appellant is concerned, even if there had been no acceptance by the town. Mrs. Luter and members of her family have continuously used it since 1941 or 1942, more than ten years.

The learned chancellor, instead of dissolving the injunction and awarding an attorney's fee, should have made the injunction perpetual, and that action, of course, would have precluded the award of an attorney's fee.

██ █ From which it follows that the decree of the trial court must be reversed, and a decree will be entered here for the appellant.

Reversed and decree for appellant.

*Roberds, P. J.,* and *Hall, Holmes* and *Ethridge,* JJ., concur.