KING, P.J.,
for the Court:
¶ 1. The appellees [the Dukes] commenced this action by filing a complaint in the Chancery Court of Carroll County alleging that a road “known as the Duke Road” was a public road and requesting the trial court enjoin the appellants [the Turners] from blocking it and declare the Duke Road to be a public road. The Turners answered the complaint and counterclaimed for injunctive relief to authorize them to erect gates along the Duke Road and direct the Dukes lock these gates after them when traveling upon the Duke Road.
¶ 2. A trial was conducted on April 16, 1997. On June 19, 1997, the trial court entered a final judgment in favor of the Dukes that declared the Duke Road was a public road and enjoined the Turners both to remove gates they had erected to limit travel on the road and to direct them not to prevent the appellees or anyone else from using the road at will. The Turners assert the trial court erred in: 1) finding the Duke Road in question public by prescription, 2) they should be allowed to gate the entrances to Duke Road and 3) the proof fails to establish both entrances to Duke Road public.
FACTS
¶ 3. In 1994, the Turners purchased a tract of land which the Duke Road bisected between the northern boundary of the Turners’ land and a second road known as Hilltop Road. The Turners constructed a house alongside the Duke Road, the enjoyment of which apparently was hampered by traffic. Consequently they constructed two gates along the Duke Road and mailed sets of keys to certain individuals. The Dukes contended that the Turners were selective in who received these keys, and not all of the appellees were permitted unfettered access through the gates. The present litigation then ensued.
¶ 4. Prior to trial, the parties stipulated that from 1980 until 1994 the Board of Supervisors’ minutes reflected that the expenditure of funds to maintain the Duke Road had been approved in the claims docket. However it is also undisputed that the Board of Supervisors had not dedicated the Duke Road as a public road in its minutes.
*497 ¶ 5. Charles Campbell testified that in 1926 people working to maintain roads with mules had to camp alongside the roads where they worked, during that time he visited his brother who was employed in county road maintenance camped alongside the Duke Road.. James R. Roberts testified that he had traveled the Duke Road for seventy years, and his family had lived alongside it until 1928. Several witness, including Roberts, stated that the Duke Road had at one time run all the way from Hilltop Road which bounded the Turners’ property to the Tioc Road. At some point part of this road fell into disuse, yet the portion which ran through the property of the Turner’s and Duke’s up to the Harper’s property remained continuously in public use through 1994. Maxie Harper similarly testified that even after part of the Duke Road was no longer used, it still was used by his family to reach his brother’s home. Other witnesses also testified that people currently living in houses accessed by the Duke Road receive mail services by mailmen who use the Duke Road.
¶ 6. Malcolm Campbell testified that sometime during the 1940’s he drove a school bus along the Duke Road to transport children living there, and while doing so observed county personnel maintaining the Duke Road. Houston Campbell testified that he lived in a house alongside the Duke Road during the 1940’s, and the county maintained the road at that time. He also stated that he had utilized the Duke Road from 1958 to 1986 to deliver butane and had met with no interference to traveling the road during that time. Guy Duke, age seventy, testified he was born in a house alongside the Duke Road and had traveled the Duke Road freely throughout his life.
¶ 7. The current county supervisor testified that the county had maintained the Duke Road from 1976 to 1994, when the Turners asked the county to stop. A road maintenance foreman of sixteen years testified that the county regularly worked the Duke Road and that the Dukes and Har-pers used it to reach their homes.
ANALYSIS
IA. THE DESIGNATION OF LAND AS A PUBLIC ROAD SHOULD ONLY BE EFFECTIVE BY ORDER OF THE BOARD OF SUPERVISORS OF THE COUNTY REFLECTED ON ITS MINUTES
¶ 8. The Turners contend that the designation of land as a public road should only be effective by order of the Board of Supervisors of the County reflected on its minutes. In this assignment of error, the Turners candidly state they ask this Court to abandon precedent and adopt the reasoning expressed in the dissent of Armstrong v. Itawamba County, 195 Miss. 802, 16 So.2d 752 (1944). Under this reasoning no public road may be established through prescription, but must be declared to be public roads in a board of supervisors’ minutes. Id. at 820,16 So.2d 752.
¶ 9. The application of stare deci-sis results in a logical anticipation of what result the law will reach when considering various issues. See, e.g. Horton v. American Tobacco Co., 667 So.2d 1289, 1298 (Miss.1995). Nevertheless, the Turners argue that in this case an improper result is reached. However, assuming the law of Mississippi was that which the Turners ask this Court adopt, the following result would be reached: in 1994 the Turners purchased land through which a road ran that had been used as a road for some seventy years by the community in general, and which the community paid to maintain for at least the fourteen previous years, yet in 1994, the Turners would be able to block this road and prevent individuals, as well as the public at large, the same access they utilized and relied upon for many years. This result would not be equitable. Moreover, even if the Turners pointed to some unfair result of the trial court’s ruling that, in and of itself, is no reason for abandoning established law be *498 cause the certainty provided through stare decisis may sometimes outweigh apparent injustice in individual instances. See, e.g., Butler v. Board of Supervisors for Hinds County, 659 So.2d 578, 581 (Miss.1995).
IB. ASSUMING A PUBLIC ROAD CAN BE ESTABLISHED BY PRESCRIPTION THE PROOF FAILS TO ESTABLISH THE NECESSARY CRITERIA
¶ 10. The supreme court stated the elements necessary to establish a public road by prescription in Myers v. Blair, 611 So.2d 969, 971 (Miss.1992) (citations omitted):
(1) open, notorious and visible;
(2) hostile;
(3) under claim of ownership;
(4) exclusive;
(5) peaceful; and
(6) continuous and uninterrupted for ten years.
Myers v. Blair, 611 So.2d at 971 (Miss.1992), also set-out additional requirements to finding a road to be a public road:
[sjince “The Road” is not shown to be a dedicated public road under the statutes and therefore under the supervision and control of the Board of Supervisors, “the road must be habitually used by the public in general for a period of ten years; and such use must be accompanied by evidence, other than mere travel thereon, of a claim by the public of the right so to do.” Brooks v. Sanders, 243 Miss. 46, 137 So.2d 174, 175 (Miss.1962). “The owner must know of and acquiesce in the adverse claim, or the use must be so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed.” McIntyre v. Harvey, 158 Miss. 16, 128 So. 572, 573 (1930).
To meet this additional criteria, Myers v. Blair, 611 So.2d at 972 (Miss.1992), found it was insufficient to have mere testimony from individual supervisors that the road had been maintained at times by the county; rather, the county’s actions should be deduced from the board of supervisor’s minutes. See also Hunter v. Lake Mor-Ri-Lo, Inc. 224 Miss. 220, 225, 79 So.2d 836, 838 (1955)(stating “[t]he only evidence of such claim here is that the road was formerly worked by the public road hands of that vicinity, but when, for how long a period, and by what authority, does not appear, so that it is of no value”). However, in this case, the parties stipulated that the board of supervisor’s minutes reflected that the county maintained the road for the fourteen years prior to the action. Therefore, the county’s uninterrupted utilization of the road was shown to have occurred for over ten years.
¶ 11. Additionally, the first five enumerated criteria of Myers v. Blair, 611 So.2d at 971 (Miss.1992), are met in this case. The public’s use was open and notorious because the county acted to maintain the Duke Road, and testimony showed the community utilized the Duke Road as a public road. See 2 C.J.S. Adverse Possession § 49 (1972). The public’s use was hostile because the public acted adversely to the interest’s of the owners of the land by entering onto and using the Duke Road without subservience to these owners. See 2 C.J.S. Adverse Possession § 60 (1972). The public’s use was under claim of ownership because the public acted to appropriate the land for its use. See 2 C.J.S. Adverse Possession § 61 (1972). The public’s use was exclusive because the public’s maintenance of the Duke Road and use as a public road were acts asserting ownership. See 2 C.J.S. Adverse Possession § 54 (1972). The public’s use of the Duke Road was peaceful because the use was undisturbed. See 2 C.J.S. Adverse Possession § 169 (1972). Therefore, all elements for acquisition of a public road were present.
¶ 12. In this case, the chancellor found all elements of prescription were found. The standard of review of findings of facts is that of “manifest error.” G. Warner, WARNERS GRIFFITH MISSISSIPPI *499 CHANCERY PRACTICE § 674 (Rev. ed.). There is no manifest error to be found in this issue.
II. SHOULD THE TURNERS BE ALLOWED TO GATE THE ENTRANCES TO DUKE ROAD
¶ 13. As the Turners’s brief states, this issue was not addressed because the trial court found that the Duke Road was a public road and that the Dukes were entitled to a injunction prohibiting the Turners from erecting gates. Because the Dukes prevailed, the trial court denied this relief which the Turners requested in their counter-claim. As this Court affirms the trial court’s holding that the Duke Road is a public road and that the Dukes were entitled to injunctive relief prohibiting gates being erected, this issue is not addressed.
¶ 14. Entrance from Hilltop Road onto the Duke Road is made by a “Y” fork, in that depending upon whether one is going north or south upon Hilltop, one will access the Duke Road by a different fork. In this assignment of error, the Turners contend that the Dukes failed to show that both forks in the Duke Road met the requirements of Myers v. Blair, 611 So.2d at 971 (Miss.1992), as discussed in Issue II.
¶ 15. Concerning this assertion of error, the trial court stated in it’s findings of fact and conclusion of law:
[defendants further made argument about the fact that there is a fork in the Duke Road near its intersection with Hilltop or Ridge Road, and they argued that only one of the forks was a public road. The evidence did establish that such a fork exists and that it exists to make ingress and egress into Hilltop or Ridge Road easier, depending on which way one was going. The evidence did establish that both of these forks have not always existed, for Guy Duke testified that for a time there was only one way to turn off of Ridge Road and that the left road was not worked at one time. He did not testify when it was that only one fork was worked. Supervisor Ashmore who had held that office off and on since 1980, testified that his crew worked both parts of the Y. with this evidence the Court recognizes that both forks may not have been open for 70 years, but finds that both forks have been used by the residents and the public and maintained by the county at the county’s expense for over ten years and that both forks are parallel to the public road.
Reviewing the record, Ashmore was specifically asked by the Turners whether the county worked both entrances to the Duke Road which included the “Y” fork, and he answered affirmatively. As such, the trial court’s finding was supported by the evidence. Additionally, the Turner’s argument is spurious in that the mere fact that improvements or changes are made to a road during it’s term of prescription does not negate the prescription. See, e.g.. Joa-chim v. Villa Santini, Inc., 353 So.2d 767, 768 (Miss.1977). Therefore, no manifest error is found.
III. THE PROOF FAILS TO ESTABLISH BOTH ENTRANCES TO DUKE ROAD WERE PUBLIC
¶ 16. THE JUDGMENT OF THE CARROLL COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, COLEMAN, DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
IRVING, J., NOT PARTICIPATING.