# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 2000-CA-00835-COA

**RAY SKATES**                                                                                      **APPELLANT**

**v.**

**JEFFERY BRYANT AND SHEREE BRYANT**                                         **APPELLEES**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 02/11/2000 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD JR. |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | L. JACKSON LAZARUS |
| ATTORNEYS FOR APPELLEES: | WILLIAM F. RILEY |
| | BOBBY L. COX |
| | T. JACKSON LYONS |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | THE COURT FINDS NO THEORY UNDER WHICH RAY SKATES MAY CLAIM ANYTHING OTHER THAN PERMISSIVE USE OF QUASAR DRIVE AND FINDS THAT THE RIGHT OF OWNERSHIP OF THE SAME IS VESTED EXCLUSIVELY IN THE BRYANTS. THE COURT GRANTS THE RELIEF OF THE BRYANTS AND ENJOINS SKATES FROM THE USE OF SAID PROPERTY ABSENT PERMISSION BY THE BRYANTS. |
| DISPOSITION: | AFFIRMED - 11/06/2001 |
| MOTION FOR REHEARING FILED: | 12/3/2001; denied 2/5/2002 |
| CERTIORARI FILED: | 3/6/2002 |
| MANDATE ISSUED: | |

BEFORE KING, P.J., THOMAS, AND LEE, JJ.

LEE, J., FOR THE COURT:

¶1. Jeffery Bryant and his wife, Sheree, filed a petition against Ray Skates to determine whether the roadway which bore the name of Quasar Drive was a private road which entitled them to its exclusive use or was a public road to be used by Skates and the general public. The chancellor held that the right of ownership was vested exclusively in Jeffery and Sheree Bryant. Additionally, the chancellor enjoined Skates from the use of Quasar Drive unless he was given permission to do so by the Bryants. Thereafter, a motion for reconsideration was filed by Skates and was denied. Feeling aggrieved Skates filed this timely appeal, and presents the following issues: (1) whether the chancellor committed manifest error when he held that

Quasar Drive was not a public street pursuant to common law dedication and (2) whether the chancellor committed manifest error when he held that Quasar Drive was not a public street under the doctrine of "user."

## FACTS

¶2. Jeffery and Sheree Bryant are the owners of two lots which are bounded on the East by Quasar Drive. Jeffery and Sheree received this land by conveyances from Jeffery's father, George Bryant, and his brother, Dwayne Bryant.

¶3. Ray Skates is the owner of the land located behind Jeffery and Sheree's lots.

¶4. Originally, the property owned by Skates was owned and developed by George and LaVerta Bryant, Jeffery's parents. In the mid to late 60s George established a trailer park on this property. Testimony revealed that a roadway was created by George as a means of ingress and egress to this property and he named it Quasar Drive. It was stated that George did the paving of the road and gave it the name of Quasar Drive because he sold Quasar televisions. It was also established that for at least ten years, while the trailer park was in existence, Quasar Drive was not only used by residents of the park, but also by such people as meter readers, school buses, and the postman. In 1977, the property on which the trailer park was located was acquired from George by James Cecil McManus.

¶5. Two days before George conveyed the land to McManus he requested civil engineer Richard Logan to perform a land survey on the tract in question. The deed which conveyed the property read as follows regarding the map made from the survey: "Being further described by a map or plat prepared by Richard T. Logan, P.E. dated May, 1977, a copy of which is attached hereto as Exhibit 'A' and made a part hereof." The diagram attached did reflect the dimensions for the roadway known as Quasar Drive. The deed was filed along with the attached map or plat in the Chancery Clerk's Office of Adams County.

¶6. For a period, McManus continued to use the property as a trailer park. However, in 1984, McManus was deceased, Skates and his wife purchased the property from McManus's wife. Thereafter, Skates's wife conveyed the property to him by quitclaim deed.

¶7. Eventually, the trailer park ceased to exist.

¶8. It was stated that even after Skates had obtained ownership of the property, there was an approximately two year period in which Quasar Drive had become overgrown with kudzu and was impassable.

¶9. Eventually, Skates began to commercialize this property by placing warehouses on the lot.

¶10. During this time, Jeffery and Sheree constructed a house alongside Quasar Drive. Jeffery and Sheree contended that since Skates had placed warehouses on his land it had increased the flow of traffic on Quasar Drive. The increase in traffic frustrated their use and enjoyment of their land. On July 17, 1997, Jeffery mailed a letter to Skates addressing the increase in traffic on Quasar Drive.

¶11. The letter informed Skates that Quasar Drive was 100 percent on private property and as of July 15, 1997, it would only be used as a private drive to his residence. Nevertheless, Skates and those that utilized the warehouses on his property continued to use the road. Additionally, Skates had bulldozed a portion of

the pavement of Quasar Drive and replaced it with gravel.

¶12. It was due to the continued commercial use of the road that this matter went to trial.

¶13. At trial, Skates attempted to establish that the road was a public road and that he and the general public were entitled to use the road. To support this claim, he presented testimony in an attempt to establish that Adams County had involvement with Quasar Drive. Portions of this testimony was disputed by the Bryants.

¶14. Michael Collier, an eighteen year employee with the Adams County Road Department, asserted that he had been on Quasar Drive in his official capacity and had performed such work as: cutting the grass, putting up a stop sign, and patching potholes at the expense of the county. Collier explained that the grass was cut back in 1980, and although he did not give a specific number of times, he believed the grass had been cut more than twice.

¶15. Roy Hinson, who at the time of trial had been an employee with the Adams County Road Department for twelve years, explained that in 1998 they had attempted to put a road sign on Quasar Drive, but were prevented from doing so by Sheree Bryant. In a previous deposition, Hinson had stated that in addition to attempting to place the new sign on Quasar Drive, he had cut the grass twice in an eleven year time period. There was testimony which insinuated that the grass was cut as a favor, in exchange for tractor work. Hinson stated that he had gotten permission to cut the grass from George Bryant.

¶16. Russell Dorris, the Adams County road manager, stated that the road department prepared a school bus turnaround on Quasar Drive. Dorris explained that other than the school bus turnaround order, there were no other completed work orders in his file. In an attempt to support the testimony of Collier, Hinson, and Dorris there were exhibits presented and entered at trial that reflected Quasar Drive as a public road.

¶17. A general highway map of Adams County was entered as an exhibit which showed what is known as Quasar Drive; however, the name was not stated on the map. In conjunction with the map, there was testimony which asserted the opinion that the highway map was only suppose to document public roads. Additionally, an Adams County map index was entered as an exhibit and classified Quasar Drive as a public road. Furthermore, a 1990 report regarding an inspection of the roads and bridges outside the corporate limits of the city of Natchez which was conducted by Supervisor Maxie Wallace was entered as an exhibit.

¶18. Wallace submitted this report to the clerk of the Board of Supervisors of Adams County. This report listed Quasar Drive as one of the roads which he had inspected. Nevertheless, there were no minutes from the Board of Supervisors stating that Quasar Drive had been designated as a public road.

¶19. Luther Marling, a registered land surveyor, who had previously performed an improvement survey for Skates, concluded that Jeffery and Sheree Bryant were the owners of Quasar Drive. However, he was of the opinion that the land on which Quasar Drive is located became an easement when George Bryant conveyed the land to McManus, because of the language regarding Quasar Drive, as well as the depiction of the road in the deed. A review of the deed between George Bryant and McManus does not show Quasar Drive being conveyed in the legal description.

¶20. Surveyor Richard Logan also stated that he was satisfied that Quasar Drive was a pubic road.

**DISCUSSION**

**I. WHETHER THE CHANCELLOR COMMITTED MANIFEST ERROR WHEN HE HELD THAT QUASAR DRIVE WAS NOT A PUBLIC STREET PURSUANT TO COMMON LAW DEDICATION.**

¶21. Skates argues that Quasar Drive became a public road by common law dedication to Adams County. Additionally, Skates contends that this dedication was accepted by Adams County and never abandoned. Skates asserts that this position was proven by the testimony of two surveyors and three employees of the Adams County Road Department.

¶22. Jeffery and Sheree Bryant assert that title to the land on which Quasar Drive is located is owned by them, and that the facts presented at trial are insufficient to prove that George Bryant intended to dedicate Quasar Drive to Adams County for use by the general public. Additionally, they assert that this case is distinguishable from *Nettleton Church of Christ v. Conwill*, 707 So. 2d 1075, 1077 (Miss. 1997), and other cases cited within it, because unlike *Nettleton* and others, the land was not sold according to a subdivided plat or map. The back lot which was initially sold by George Bryant to McManus, and later to Skates was one big lot which was accessed by Quasar Drive.

¶23. As an appellate court, we will not disturb the factual findings of a chancellor unless the findings are manifestly wrong or clearly erroneous. *Nettleton Church of Christ*, 707 So. 2d at 1076 (¶3). This same standard is applied even when conflicting evidence had been presented by the parties. *See Harvey v. Meador*, 459 So. 2d 288, 293 (Miss. 1984). In the case at bar, there was conflicting evidence regarding whether Quasar Drive had become a public road under the theory of common law dedication.

¶24. A street will become a public street under common law dedication when the survey and sale of lots makes reference to the streets. In *Luter v. Crawford*, the Mississippi Supreme Court quoted from *Briel v. City of Natchez*, 48 Miss. 423 (1873), which stated : "if the owner of urban property has laid it off into lots intersected by streets, and sells the same with reference thereto, or with reference to a map or plat dividing it into squares, streets and alleys, such action will amount to a dedication of the streets and alleys to the public." *Luter v. Crawford*, 230 Miss. 81, 88, 92 So. 2d 348, 351-52 (1957). If a common law dedication is found it works by way of equitable estoppel and normally creates a mere easement. *Nettleton Church of Christ*, 707 So. 2d at 1076.

¶25. The chancellor addressed the issue of common law dedication at the hearing on the motion to reconsider and stated the following regarding his reasons for denying the motion:

> However, insufficient evidence was presented in this particular case to show a common law dedication, although there was some governmental action by the governing authority present in the facts presented, such as occasional, and I highlight *very* occasional, mowing or maintaining in any shape, form or fashion of the road, the court finds that such was not to the extent required to prove a common law dedication. And, additionally, the court specifically finds that the attachment or the drawing to the deed vesting title in the defendants by Mr. Bryant is insufficient as a dedication by the grantor of the road or the easement as a public right of way.

¶26. Although some of the evidence was disputed, there was evidence in the case at bar which showed that prior to the conveyance from George Bryant to McManus, George had a map prepared by engineer Richard Logan. The map showed individual lots owned by George, along with the one being purchased by McManus, as well as roadways, including the road called Quasar Drive. In this deed, there was a reference

made to the map or plat; however, as asserted by the Byrants, the deed stated that the reference is made for the purposes of assisting in the description. Quasar Drive was not contained in the legal description.

¶27. The testimony given only reflected that George Bryant may have initially intended to establish a subdivision on the lot currently owned by Skates; however, there is no evidence of a more conclusive nature to reflect that it had been formalized. *See Magnolia Memorial Gardens, Inc. v. Denton*, 317 So. 2d 38, 42 (Miss. 1975) (Mere *plans* for further development of a cemetery garden only shows an *intent* to develop and does not establish dedication for a public cemetery.)

¶28. In *Magnolia Memorial Gardens*, the Mississippi Supreme Court continued and stated:

In order to constitute a dedication at common law, it is essential that there be an intention of the owner of the land to donate the same for public use. It has been said that the controlling element of the common law dedication is the intent to donate. Donation is the act by which the owner of something voluntarily transfers the title and possession of the same without any consideration.

Furthermore, another essential element of a dedication is that it shall be for the public at large, not to one person or a limited number of persons or for the exclusive use of a restrictive group of individuals.

*Id*. (citations omitted). The facts in this case reveal that George's intent was to operate a trailer park. Quasar Drive was used by George as access for the residents of the park; therefore, it was intended to be used by a restrictive group of people, not the public in general. Additionally, the conveyance from George to McManus was a wholly private act, and not intended to benefit the public. Furthermore, as argued by the Bryants, the plat that was attached to McManus's deed did not show a subdivision that was going to be sold by lots and blocks to the general public.

¶29. The chancellor's conclusion that the deed which vested title in Skates is insufficient to establish a public street is accurate. Accordingly, we determine that the chancellor did not abuse his discretion. Indeed, there was insufficient evidence for him to determine that a common law dedication had occurred. Since we have concluded that no dedication occurred we need not, and will not, address whether any actions taken by Adams County were done as a reflection of its intent to accept a dedication.

## II. WHETHER THE CHANCELLOR COMMITTED MANIFEST ERROR WHEN HE HELD THAT QUASAR DRIVE WAS NOT A PUBLIC STREET UNDER THE DOCTRINE OF "USER."

¶30. Skates argues that there was sufficient proof presented to establish that Quasar Drive became a public street under the doctrine of "user." One case cited by Skates to support his position is *Turner v. Duke*, 736 So. 2d 495 (Miss. 1999).

¶31. In *Turner*, the Mississippi Supreme Court once again enumerated the necessary elements to establish a public road by prescription:

(1) open, notorious and visible;

(2) hostile;

(3) under claim of ownership;

(4) exclusive;

(5) peaceful; and

(6) continuous and uninterrupted for ten years.

*Turner*, 736 So. 2d at 498 (¶10). *Turner* went on to explain that when roads are not proven to be a dedicated public road under statute, there must be more evidence than mere travel by the public on the road for ten years. *Id*. This requires that the owner "know of and acquiesce in the adverse claim, or the use must be so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed." *Id*.

¶32. The testimony in the case at bar proved that the Bryants held title to a majority of the property know as Quasar Drive. Additionally, there was testimony that George Bryant, Jeffery Bryant's father, was the individual who established the trailer park and had paved and named Quasar Drive as a means of ingress and egress pertaining to this business venture (i.e., the trailer park). Furthermore, the Bryants clearly stated that they knew that the property was being used by the general public to access the trailer park, and later, by Skates and others involved with the warehouses located on the property, but that this was done with their permission.

¶33. On the contrary, Skates presented testimony from county road workers that Quasar Drive had been maintained by them on occasion. However, while Skates presented testimony from numerous Adams County road employees, as well as surveyors, the presence of any minutes from the board of supervisors to establish the county's involvement with Quasar Drive was nearly non-existent. In *Myers v. Blair*, 611 So. 2d 969, 972 (Miss. 1992), the Mississippi Supreme Court held that mere testimony from individual supervisors that a road had been maintained at times by the county was not sufficient; the actions should be deduced from the board's minutes.

¶34. The two items of evidence regarding the board's possible involvement with Quasar Drive were: (1) the work order that approved the bus turnaround, and (2) a report from Supervisor Maxie Wallace. The work order regarding the bus turnaround cannot be used to positively establish that the road is a public road, because Miss. Code Ann. § 19-3-42 (Rev. 1995), allows the board to "grade . . . private gravel or shell roads or driveways to private residences if such roads or driveways are used for school bus turnarounds." Additionally, the report from Wallace is inconclusive because he was not available to testify regarding his report and belief that Quasar Drive was a public road. Furthermore, the report submitted by Wallace to the board of supervisors did not require the board to accept or reject the contention and take any further action regarding the same.

¶35. Even though the evidence is conflicting, under our standard of review stated in issue one, there was sufficient evidence to support the chancellor's conclusion that the use was permissive and the road was private. In *Patterson v. Harris*, it is stated:

A use that has its inception in the permission of the owner will continue as such until a distinct and positive assertion of a right hostile to the owner is brought home to him by words or acts. To transform a permissive use into an adverse one there must be (1) a distinct and positive assertion of a right hostile to the rights of the owner, which is brought to his attention, or (2) a change in the character of the use.

*Patterson v. Harris*, 239 Miss. 774, 785, 125 So. 2d 545, 550 (1960)(citations omitted). Reviewing all of the facts placed into evidence, we find that the element of hostility is not present. In fact, the first sign of action that may be classified as hostile and/or adverse to the Bryants' interest in Quasar Drive, was the fact that Skates and others continued to use Quasar Drive even after Skates had received Jeffery Bryant's July 17, 1997 letter stating he was no longer to use this road. This fact is not sufficient to establish a public road by prescription because among other reasons, it fails to meet the time requirement of ten years.

¶36. As listed in *Turner*, the element of hostility is one of many elements required to prove and establish a public road by prescription. Since this element is absent for the term of years required under law, the chancellor did not abuse his discretion in relying on the aforementioned evidence and holding that the burden of proof had not been met by Skates. Accordingly, this issue is without merit.

¶37. **THE JUDGMENT OF THE CHANCERY COURT OF ADAMS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.**