McRAE, Presiding Justice,
Dissenting:
¶20. The majority erroneously finds that Quasar Drive is not a public road under the common law doctrine of dedication or under the doctrine of prescription. As the evidence presented indicates, Quasar Drive was dedicated for public use as a “public road” by map and deed language. Alternatively, Quasar Drive became a public road by way of prescription, and there is no evidence to justify a finding of abandonment of use. For these reasons, I dissent.
¶ 21. First it is essential to state certain facts to clear up confusion. Testimony indicates that the road in question was built and used by the public for years before George Bryant (George) became the purchaser of the property. In fact, a 1964 survey shows the road as a “public road.” George named the road Quasar Drive in 1969 or 1970 as it was the road *913 which provided access to a trailer park which he had established on his land. The trailer park, with at least thirty family units, operated continuously for 15 years till 1984 or 1985. However, stragglers in the trailer park did not vacate until around 1988 or 1989. During the trailer park’s existence, school buses, postmen, and others used Quasar Drive.
¶22. In 1977, George sold Cecil Mc-Manus (McManus) a portion of his property. Dining this sale, George had a survey conducted which reflects subdivision of the land into lots. The maps and plats of this survey were placed on record in the Office of the Chancery Clerk of Adams County, Mississippi, and labeled George Bryant Lands. The map and plat clearly show Quasar Drive as a cul-de-sac into the subdivided land. Although George never finished subdividing his land according to the map, all testimony indicated that his intent was to subdivide and sell lots. This map was incorporated into the deed by reference. The deed executed between Mc-Manus and George clearly stated that the land conveyed is “further described by a map or plat prepared by Richard T. Logan, P.E. dated May 1977, a copy of which is attached hereto as Exhibit ‘A’ and made a part hereof.” As already stated, this survey, map, and plat clearly shows Quasar Drive as a cul-de-sac and public road of ingress and egress. McManus continuously used Quasar Drive from the time of purchase in 1977 till 1984.
¶ 28. In 1984, the McManus lot was conveyed to Ray Skates (Skates). Later, some of George’s property was deeded to his son Jeff Bryant (Jeff) and his wife, Sheree Bryant. In 1997, Jeff wrote a letter to Skates revoking his permission to use Quasar Drive.
¶ 24. Facts presented which indicate public use of Quasar Drive include:
(1) Road maintenance by the County, which included gravel work, the posting and maintaining of stop signs, the posting and maintaining of streets signs, and mowing of the grass;
(2) School bus usage of the road not only while the trailer park was still maintained, but afterwards as a turn around spot for the bus;
(8)Usage of the road by maintenance crews, such as power, water, and telephone crews;
(4) Before George named the road, a 1964 survey of the County shows the Road to be a “public road”;
(5) The road is listed on the State’s General Highway Map;
(6) The road is listed on the Civil Defense map of Adams County;
(7) Minutes of the Board of Supervisors shows that Quasar Drive was inspected by the County;
(8) Jeffs own deed filed in the Office of the Chancery Clerk of Adams County, Mississippi specifically states in its description of the conveyance property that it is “[s]ub-ject to the rights of the public in that portion known as Quasar Drive”;
(9) Emergency 911 records list Quasar Drive as “Public”;
(10) The area in question is highly commercialized with at least sixteen businesses operating within 700 yards from the road;
(11) One such commercial business operating in close proximity, Bobby’s Service Center, has even suggested that its customers use Quasar Drive to access its business;
(12) Quasar Drive is one mile from the busy Morgantown Intersection and *914 .7 mile from the Natchez City Limits;
(13) The deed of McManus, the predecessor owner of Skates property, reflects that the property conveyed is described by a certain attached plat which reflects subdivision of George’s property into lots and Quasar Drive as a public right of way;
(14) McManus continuously used Quasar Drive for ingress and egress from 1977 till 1984;
(15) Skates continuously used Quasar Drive for ingress and egress from 1984 till 1997, when this lawsuit was filed; and
(16) Residents of the trailer park, visitors, and others used Quasar Drive for fifteen years as their exclusive route of ingress and egress from 1969 till 1984.
Although Jeff omits these facts from his brief, they are all in the record and substantiated by evidence and testimony.
¶ 25. As the evidence indicates, Quasar Drive was dedicated for public use as a “public road” by map and deed language. As has been stated by this Court, “[i]f the owner of urban property has laid it off into lots intersected by streets, and sells the same with reference thereto, or with reference to a map or plat dividing it into squares, streets, and alleys, such action will amount to a dedication of the streets and alleys to the public.” Luter v. Crawford, 230 Miss. 81, 88, 92 So.2d 348, 351-52 (1957). See also Nettleton Church of Christ v. Conwill, 707 So.2d 1075, 1076 (Miss.1997); Coleman v. Shipp, 223 Miss. 516, 530, 78 So.2d 778, 784 (1955); Sipes v. Town of Tishomingo, 735 So.2d 1047, 1049 (Miss.Ct.App.1999).[1] “[I]n order to consummate a dedication, there must be an acceptance ... and such acceptance may occur either by the formal act of the local municipal authority, or it may be inferred or implied from sufficient circumstances.” Luter, 92 So.2d at 352. See also Sipes, 735 So.2d at 1049.
¶ 26. Under the facts, all of the elements for dedication have been met. The deed executed between George and Mc-Manus, the original buyer of a portion of the land later acquired by Skates, contains language referencing Quasar Drive and a plat map whereby George had the land surveyed and prepared for division into lots. Specifically, the deed states “further described by map or plate prepared by Richard T. Logan, P.E., dated May, 1977, a copy of which is attached hereto as Exhibit ‘A’ and made a part hereof.” In fact, the deed executed in favor of McManus included as an attachment the map or plat depicting the lot divisions and Quasar Drive. Skates as the buyer of said property acquired all the rights associated with McManus’s property ownership which included the dedication and use of Quasar Drive. There is of course acceptance illustrated by the use of Quasar Drive not only by McManus for seven years, but also by Skates for thirteen years. Additionally, the deed executed between George and Jeff specifically states that the conveyance is “subject to the rights of the public in that portion known as Quasar Drive.” It is abundantly clear from the evidence that Quasar Drive has been dedicated for public use.
*915 ¶ 27. Furthermore, even if public dedication were not found to apply, Quasar Drive is still a public road by prescription. As early as 1894, we have recognized that a road may become subject to public use by easement or prescription. See Alcorn v. Sadler, 71 Miss. 634, 634-35, 14 So. 444, 444-45 (1894).[2] The case most factually on point comes from the Court of Appeals and is Turner v. Duke, 736 So.2d 495 (Miss.Ct. App.1999). The Turners had acquired a tract of land which Duke Road bisected. Id. at 496. The Turners built a house along Duke Road. They later claimed that the enjoyment of their house was hampered by traffic, so they built two gates along Duke Road and gave keys to the gates to certain individuals. The Dukes protested the installation and use of the gates and filed a complaint in the Chancery Court of Carroll County claiming that Duke Road was a public road and therefore, the Turners should be enjoined from blocking the road with gates. It was stipulated that from 1980 till 1994, the Board of Supervisor minutes reflected that expenditures had been made to maintain Duke Road, but that the Board had never dedicated the road as a public road in the minutes. Id. Testimony at trial showed that public funds had been used to maintain Duke Road and a school bus had continuously used Duke Road to transport children living there. Id. at 497. Ultimately, the trial court sided with the Dukes and declared Duke Road to be a public road and thereby enjoined the Turners both to remove the gates and directed them not to prevent use of the road. Id. at 496. On appeal, the Turners argued, as does Jeff in the present case, that the road is not a public road since the only effective action to make the road public would have been the County Board of Supervisors’ official designation of the road as public road in its minutes. Id. at 497. The Court of Appeals declined to adopt this view and asserted that precedent on the issue does not support such an argument and declined to abandon such precedent and adopt the reasoning and arguments of the Turners. Id.
¶ 28. Next, the Turners argued, as does Jeff in the present case, that Duke Road had not become a public road by prescription since it did not meet the elements for such. Id. at 498. The elements to establish a public road by prescription include:
(1) open, notorious and visible;
(2) hostile;
(3) under claim of ownership;
(4) exclusive;
(5) peaceful; and
(6) continuous and uninterrupted for ten years.
Id. (citing Myers v. Blair, 611 So.2d 969, 971 (Miss.1992) (citations omitted)). The Court of Appeals then analyzed all six elements. As to the first element of open, notorious, and visible, the Court of Appeals found this element was met by the county’s actions of maintaining the road and testimony showing that the public utilized Duke Road as a public road. Id. Likewise the second element of hostile was satisfied “because the public acted adversely to the interest’s of the owners of the land by entering onto and using the Duke Road without subservience to these owners.” Id. (citing 2 C.J.S. Adverse Possession § 60 (1972)). The third element of under claim of ownership was also satisfied “because the public acted to appropriate the land for its use.” Id. (citing 2 C.J.S. Adverse Possession § 61 (1972)). Exclusive, the fourth element, was satisfied “because the public’s maintenance of the Duke Road and use as a public road were acts asserting ownership.” Id. (citing 2 C.J.S. *916 Adverse Possession § 54 (1972)). The fifth element, peaceful, was also satisfied “because the use was undisturbed.” Id. (citing 2 C.J.S. Adverse Possession § 169 (1972)). As with the sixth element, continuous and uninterrupted for ten years, the Court of Appeals found that since there had been no public dedication through the County Board of Supervisors’ designation of Duke Road as a public road, the County’s action regarding the road must be “deduced from [other actions illustrated in] the board of supervisor’s minutes.” Id. (citing Myers, 611 So.2d at 972). After a review of the Board of Supervisors’ minutes, the court found that the County had appropriated funds and maintained the road and the public had used the road for more than ten years. Id.
¶ 29. The facts and circumstances of the present case are very similar. Here we also have a family who aggrieved by traffic flow decided to prohibit the use of the road upon which their house sits. Instead of a gate, the Bryants chose to put individuals, such as Skates, on notice through written letter that indicating that they could no longer use Quasar Drive. Also, as in Turner, the Board of Supervisors has maintained and appropriated funds for Quasar Drive. Using the six elements above, Quasar Drive is a public road by prescription as illustrated below:
(1)Open, Notorious, and Visible:
Since 1964, Quasar Drive has been in public use, although not named at that time. The County has appropriated funds, maintained, and inspected Quasar Drive. Quasar Drive is listed on the State’s General Highway Map, the Adams County Civil Defense map, and Emergency 911 records.
From 1984 till 1997, the filing of this lawsuit, Skates has continuously used Quasar Drive.
Additionally, many commercial businesses are located in the area and at least one has used Quasar Drive as a recommended route to their business.
(2) Hostile:
To quote Turner, “the public [has] acted adversely to the interests of the owners of the land by entering onto and using the [Quasar Drive] without subservience to [the owners].” Id.
(3) Under Claim of Ownership:
The public has consistently acted to appropriate the land for its use as illustrated by the facts listed earlier.
(4) Exclusive:
The public’s maintenance of the road, posting and maintaining of stop signs and street signs, inspection of the road’s conditions, and mowing of the grass amount to acts asserting ownership and exclusive control.
(5) Peaceful:
Since around 1964 Quasar Drive has been in use by the public. There was only a momentary lapse of time whereby the conditions of portions of Quasar Drive made it hard to maneuver. However, these conditions were soon repaired, and there is evidence tending to show that even during this period of time the road was still in use.
From 1984 till 1997, the filing of this lawsuit, Skates has used Quasar Drive. There are many commercial businesses in the area and at least one is documented to have recommended Quasar Drive as a route of entry.
(6) Continuous and Uninterrupted for Ten Years:
Again, since around 1964, Quasar Drive has been in public use, although not named at the time. In fact from 1969 to 1989, a period of twenty years, the road was the exclusive ingress and egress to *917 a trailer park situated on the George’s land. Quasar Drive was not only used by the trailer park residents but others included school buses, postmen, visitors, and county work crews. Additionally, from 1984 till 1997, the filing of this lawsuit, Skates has used Quasar Drive to access his property. There can be no doubt, Quasar Drive has been in continuous and uninterrupted use for over 10 years.
Having evaluated the facts according to the elements for prescriptive use, it is obvious that Quasar Drive is a public road by prescription.
¶ 30. Additionally, Jeffs argument regarding abandonment fails. “To constitute an abandonment, the use for which the property is dedicated must become impossible of execution, or the object of the use must wholly or totally fail.” Nettleton Church of Christ v. Conwill, 707 So.2d at 1077 (quoting 23 Am.Jur.2d Dedication § 67). “[M]ere nonuser will not constitute an abandonment.” Id. (citing Bright v. Michel, 242 Miss. 738, 137 So.2d 155, 158 (1962)).[3]
¶ 31. The only conceivable evidence relating to abandonment is the assertion that for a period of unknown time a portion of Quasar Drive was allegedly incapable of passage. The key factor to this assertion is that it was only a portion of Quasar Drive that was allegedly overgrown making passage difficult. For the most part, Quasar Drive was still open and maneuverable and even that portion which was overgrown was not impassable. There has been no abandonment of Quasar Drive.
¶ 32. Thus, the chancellor and the Court of Appeals erred in failing to find that Quasar Drive is a public road. Accordingly, I would reverse their judgments and remand this case to the chancery court with directions that it enter an appropriate judgment adjudicating that Quasar Drive is a public road and finally dismissing the Bryants’ petition and this action with prejudice.
¶ 33. For these reasons, I dissent.

. Other cases finding the same include Skrmetta v. Moore, 227 Miss. 119, 86 So.2d 46 (1956); Panhandle Oil Co. v. Trigg, 148 Miss. 306, 114 So. 625 (1927); Indianola Light, Ice & Coal Co. v. Montgomery, 85 Miss. 304, 37 So. 958 (1904); City of Vicksburg v. Marshall, 59 Miss. 563 (1882); Briel v. City of Natchez, 48 Miss. 423 (1873); Vick v. City of Vicksburg, 2 Miss. (1 How.) 379 (1837).

. See also Coleman v. Shipp, 223 Miss. 516, 530-31, 78 So.2d 778, 784 (1955).

. See also Sipes v. Town of Tishomingo, 735 So.2d 1047, 1050 (Miss.Ct.App.1999).